## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ÁNGEL M. MATOS-LUGO**<br><br>    Plaintiffs<br><br>    vs.<br><br>**HOSPITAL ESPAÑOL AUXILIO MUTUO DE PUERTO RICO, INC. d/b/a HOSPITAL AUXILIO MUTUO; SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO Y BENEFICIENCIA DE PUERTO RICO; CORPORATION X; DR. JESSIE GIRON MOREL and the conjugal partnership formed with JANE DOE; DR. GADIEL MERCED ALVAREZ and the conjugal partnership formed with PATTY POE; THE MEDICAL PROTECTIVE COMPANY d/b/a MEDPRO GROUP; PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY; SIMED; COMPANIES A-Z; JOHN DOE; PATTY DOE**<br><br>    Defendants | **CIVIL NO.**<br><br>**PLAINTIFFS REQUEST JURY TRIAL** |

## **COMPLAINT**

**TO THE HONORABLE COURT:**

    **COME NOW** plaintiff through the undersigned legal representation, and very respectfully STATE, REQUEST AND PRAY:

## **JURISDICTIONAL ALLEGATIONS**

    1.    This Honorable Court is vested with jurisdiction over the parties and the subject matter of this litigation under and pursuant to the diversity of citizenship statute (Section 1332 (c) of Title 28 of the United States Code, 28 U.S.C. §1332), inasmuch as there is complete diversity of citizenship between the Plaintiff, as resident of the country of St. Kitts, West Indies, and the defendants, residents of the Commonwealth of Puerto

Rico, and the amount in controversy, exclusive of costs and interest, exceeds the amount of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00). As more specifically alleged below, all defendants are domiciled and permanent citizens of Puerto Rico within the meaning of 28 U.S.C. §1332 and Plaintiff is domiciled and permanent citizens of a sovereign country other than the Commonwealth of Puerto Rico.

2. Venue is proper in this Court pursuant to Section 1391 of Title 28 of the United States Code, 28 U.S.C. §1391, because the claims asserted arose in this judicial district.

3. Plaintiff requests a jury trial.

4. All codefendants are jointly and severally responsible to plaintiffs for the damages caused to them.

## THE PARTIES

5. Plaintiff **ÁNGEL M. MATOS-LUGO** (hereinafter "Ángel") is of legal age, a general medicine doctor, single, and domiciled in Calypso Bay Resort, Villa 46, Frigate Bay, St. Kitts, West Indies. Ángel is the son of **ÁNGEL M. MATOS-MARÍN** (RIP) (hereinafter "Mr. Matos"). Ángel appears on his own behalf for his emotional damages suffered by the death of his father Mr. Matos, due to the negligent acts and/or omissions of co-defendants.

6. Co-defendants **HOSPITAL ESPAÑOL AUXILIO MUTUO DE PUERTO RICO, INC. d/b/a HOSPITAL AUXILIO MUTUO** (hereinafter "Auxilio Mutuo") and **SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO Y BENEFICIENCIA DE PUERTO RICO** (hereinafter "Sociedad Española") are entities which are organized and exist under the laws of the Commonwealth of Puerto Rico and they are owners, administrators, and/or

operators of a hospital commercially known as Hospital Auxilio Mutuo located in San Juan, Puerto Rico, which provides medical services to the general public and provided medical treatment to Mr. Matos. Co-defendants Auxilio Mutuo and Sociedad Española are the employers, contractor and/or extended medical privileges to practice medicine in Hospital Auxilio Mutuo to co-defendants Dr. Jessie Girón-Morel and Dr. Gadiel Merced-Alvarez at the times of the facts alleged in this complaint. Co-defendants Auxilio Mutuo and Sociedad Española are the employers of the nurses' staff, the respiratory therapists, escorts, interns and any other person who provided medical treatment, tended to or transported Mr. Matos at the times of the facts alleged in this complaint. Co-defendant Auxilio Mutuo and Sociedad Española are jointly and vicariously liable for the negligent acts and/or omissions of its employees, contractors and medical faculty to whom they have extended privileges and provided medical treatment to Mr. Matos. Co-defendants Auxilio Mutuo and Sociedad Española's address is Ponce de Leon Avenue, Stop 37 ½, Hato Rey, Puerto Rico 00919 and their phone number is 787-758-2000.

7. Co-defendant **CORPORATION X and/or HOSPITAL ESPAÑOL AUXILIO MUTUO DE PUERTO RICO, INC. d/b/a HOSPITAL AUXILIO MUTUO and/or SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO Y BENEFICIENCIA DE PUERTO RICO.** (hereinafter "Coportation X") is a corporation organized and that exists under the laws of the Commonwealth of Puerto Rico, who is the owner, administrator and/or operator of the emergency room of co-defendants Auxilio Mutuo and Sociedad Española, and which provides medical treatment to the general public and provided medical treatment to Mr. Matos. Co-defendant Corporation X was contracted by co-defendants Auxilio Mutuo and Sociedad Española to administer and/or operate its emergency room. Co-defendant

3

Corporation X is the employer or extended a professional services contract or independent contract to co-defendant Dr. Gadiel Merced-Alvarez. Co-defendant Corporation X is solitarily and vicariously liable for the negligent acts and/or omissions of its employees, contractors and medical faculty to whom they have extended privileges and provided medical treatment to Mr. Matos. In the alternative, the emergency room at the times alleged in this complaint was owned, administered and/or operated by co-defendants Auxilio Mutuo and Sociedad Española.

8. Co-defendant **DR. JESSIE GIRON-MOREL** (hereinafter "Dr. Giron") is an internal medicine physician duly authorized in the Commonwealth of Puerto Rico, who provided medical services to Mr. Matos at Hospital Auxilio Mutuo. He is married to **JANE DOE**, with whom he has a conjugal partnership. At all times relevant to the facts of this case, Dr. Girón had medical privileges at co-defendants Auxilio Mutuo and Sociedad Española and/or was an employee or contractor of said co-defendants. Co-defendant Dr. Girón's address is Urb. Villa Mar Calle Marginal 41, Carolina, PR 00981 and his phone number is 787-253-4080.

9. Co-defendant **DR. GADIEL MERCED-ALVAREZ** (hereinafter "Dr. Merced") is an emergency medicine physician duly authorized in the Commonwealth of Puerto Rico, who provided medical services to Mr. Matos at Hospital Auxilio Mutuo. He is married to **PATTY POE**, with whom he has a conjugal partnership. At all times relevant to the facts of this case, Dr. Merced had medical privileges at co-defendants Auxilio Mutuo and Sociedad Española and/or was an employee or contractor of said co-defendants. At all times relevant to the facts of this case, Dr. Merced was an employee or contractor of co-defendant Corporation X. Co-defendant Dr. Girón's address is Medical Center Udh Adult

2 HIPAA Office University District Hospital San Juan, San Juan, PR 00922 and his phone number is 787-750-0930.

10. Co-defendant **THE MEDICAL PROTECTIVE COMPANY d/b/a MEDPRO GROUP** is an insurance company authorized to do business in Puerto Rico, which at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the responsibility of co-defendants Auxilio Mutuo and Sociedad Española.

11. Co-defendant **PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY** is an insurance company authorized to do business in Puerto Rico, who at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the responsibility of co-defendants Dr. Girón and Dr. Merced.

12. Co-defendant **SIMED** is an insurance company authorized to do business in Puerto Rico, who at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the responsibility of co-defendants Dr. Girón and Dr. Merced.

13. Co-defendants **COMPANIES A-Z** are legal entities that at the times relevant to these facts owned, operated, managed, and/or administered, in whole or in part, and were solely or partially responsible for the administrative and medical issues of any of the codefendant's medical entities to provide all or part of the medical and/or administrative services. In the alternative, they are other legal entities that caused or contributed to causing the damages to plaintiffs. Also, and in the alternative, they are insurance

companies which at the time the facts of this case took place had in full force and effect insurance policies in favor of codefendants.

14. Co-Defendants **JOHN DOE** and **PATTY DOE** are all codefendants of unknown identity that caused and contributed to causing plaintiffs damages. Their identities will be revealed once they are known through discovery.

15. All of the named defendants are jointly and severally responsible to plaintiffs for the damages caused to them. All defendants fictitiously named herein, will be correctly named once their identities are determined.

## THE RELEVANT FACTS

16. On June 22, 2019, Mr. Matos was taken to the emergency room at Hospital Auxilio Mutuo by his son, plaintiff Ángel, due to slurred speech. His primary care physician, Dr. Girón, was called and later discharge him on that same day.

17. On June 23, 2019 at approximately 12:23 p.m., Mr. Matos was taken again to the emergency room at Hospital Auxilio Mutuo via ambulance. Mr. Matos was accompanied by his son, plaintiff Ángel. Mr. Matos chief complaint, per the medical record, was difficulty breathing and that he could not hold himself.

18. Mr. Matos blood pressure was 114/82, pulse of 90, temperature of 97.0 F, respirations of 18. Mr. Matos was taking the following medications: Atacand 32mg, Metformin 500mg and Zocor 400mg.

19. Per the medical record, Mr. Matos was treated at the emergency room by co-defendant Dr. Merced, who indicated on the notes that Mr. Matos was brought to the hospital due to dyspnea and general weakness and that he could not stand by himself. The notes also indicated that Mr. Matos had a history of ethanolism, that he had stopped

drinking 6 days before and that he had gone to the emergency room the day before and was discharge as requested by primary care physician.

20. Per the medical record, Mr. Matos was diagnosed with hypoxemia and his condition was marked as "Guarded".

21. Per the medical record, at 2:25 p.m., Dr. Merced requested an internal medicine consultation to Dr. Girón stating that Mr. Matos presented dyspnea, hypoxemia and generalized weakness.

22. Per the medical record, at 2:29 p.m., Dr. Merced ordered that Ativan (Lorazepam) 1mg/0.5ml via IV be administered every 6 hours. Ativan or Lorazepam is a medication which acts on the brain to produce a calming effect and it is used to treat anxiety and sleeping disorders, seizures, alcohol withdrawal, and nausea and vomiting due to chemotherapy.

23. Per the medical record, Dr. Girón evaluated Mr. Matos and indicated in the admission note that he was decompensated with alcohol withdrawal, had increased WBC (18.87H) and that the chest x-rays showed atelectasis, which is a partial or complete collapse of the lung or area of the lung, which is associated with hypoxemia. The blood arterial gases were $POC_2(RT)$ of 51.9 H (35.0-45.0mmhg), $HCO_3RT$ of 35.5 H (22.0-26.00mmol/L), the BNP (brain natriuretic peptide) of 250 H (0-99pg/ml), neutrophils of 87 H (50-79%), CK-MB (creatine kinase-MB) of 16.08 H (0.00-5.00ng/ml), glucose of 126 H (74-106mg/dL), urea of 38 H (9-23mg/dL), troponin I of 392.64 CH (0.00-45.20pg/mL).

24. Mr. Matos was admitted as an inpatient of the medicine ward at Hospital Auxilio Mutuo by Dr. Girón on June 23, 2019 at 4:31 p.m.

7

25. Per the medical record, at 5:11 p.m., Dr. Girón order that Ativan (Lorazepam) 2mg/1ml via IV be administered every 6 hours.

26. Per the internal medicine consultation progress note, at 7:24 p.m., intern Dr. Alexandra Feliz was called by nurses since Mr. Matos oxygen saturation was dangerously low in 40-60%. When she arrived, respiratory personnel was ventilating the patient who had a pulse of 90. Anesthesia is called due to difficulty to maintain oxygen at 80% and Dr. Feliz ordered Mr. Matos be intubated endotracheally, which was done by anesthesiology team. Dr. Feliz contacts Dr. Girón, who gives order to transfer Mr. Matos to ICU.

27. Per the medical record, at 7:29 p.m., Dr. Girón entered an order to transfer Mr. Matos to the ICU and at 7:31 p.m. he requested a consult to pneumology.

28. Per the medical record, at 8:43 p.m., Dr. Girón order that Mr. Matos be connected to a mechanical ventilator.

29. Per the medical record, at 10:49 p.m., Dr. Girón order Ativan (Lorazepam) 3mg/1.5ml via IV be administered every 4 hours.

30. Per the progress notes of 11:21 p.m., RN Georlyn M. Mendoza Alicea indicated that Mr. Matos was received from the emergency room at 6:15 p.m. by escorts and no nurses, he was saturated 38 to 40 of $SO_2$ with arterial blood pressure of 174/84, pulse of 94, respirations of 37. That the son, Ángel, referred that after receiving doses of Ativan, Mr. Matos was non responsive to stimulus and presented abdominal respirations. A "orange code" was started at 6:23 p.m. and nasal cannula was inserted and were waiting to the Rapid Response team. When the Rapid Response team arrived, they started the "green code type A" at 6:28 p.m with medical interns Dr. Taryme Lopez, Dr.

Luis Almaguer and Dr. Alexandra Feliz with General Supervisor Lozada. Anesthetist Lorena Ramos arrived at 6:30 p.m., the protocols were started and Mr. Matos was intubated at 7:00 p.m. by her.

31.     Per the progress notes of 7:45 p.m., RN Lorena Ramos Molina indicated that she answered a green code and was ordered to intubate the patient by Dr. Alexandra Feliz and she assisted with manual ventilator.

32.     Ángel was present while his father, Mr. Matos, was coding and later intubated. Ángel saw how his father arrived upon transfer from the emergency room without a monitor and oxygen, even though he had a monitor and oxygen while he was in the emergency room prior to being transferred.

33.     Per the medical record, on June 29, 2019 at 12:53 p.m., Dr. Girón requested an infectious disease consult to a Dr. Carlos Sánchez. On that same day, Dr. Sánchez ordered Mr. Matos be administered Vancomycin, Azytromycin and Piperacillin, medication used to treat infections, to treat sepsis due to suspicion of acute pneumonic process due to mechanical ventilation.

34.     Per the medical record, on June 30, 2019 at 12:22 p.m., Dr. Noel Totti requested a nephrology consult to doctors Troche, Santiago, Nieves and/or Figueroa. Said consult was answered by Dr. Rodolfo Troche Negron. On that same date, at 3:47p.m., Dr. Girón requested another nephrology consult to Dr. Troche.

35.     Per the medical record, on July 1, 2019 at 3:12 p.m., Dr. Girón requested a cardiology consult to Dr. Gilberto Rivera due to Mr. Matos presenting delirum tremens and supraventricular tachycardia (SVT) for the past two days. On that same date, at 6:35 p.m., Dr. Girón requested an invasive radiology consult.

36. Per the medical record, during his admission at Hospital Auxilio Mutuo, Mr. Matos was diagnosed with the following: upper gastrointestinal bleeding, septic shock, ventilator associated pneumonia, acute respiratory failure, sepsis, acute injury of kidney, hypertension, type 2 diabetes mellitus, alcohol withdrawal syndrome, hypoxemia, alcohol abuse.

37. Per the medical record, Mr. Matos was intubated during the totality of his admission at Hospital Auxilio Mutuo and on several occasion the endotracheal tube did not worked properly and needed to be changed.

38. Per the nurses' progress note of July 11, 2019 at 12:32 a.m., the green code was called on July 10, 2019 at 11:11 p.m. and ACLS was started on Mr. Matos by RN Gerardo L. Rivera Figueroa and intern Dr. Luis Almarguer. He was given Epinephrine and CPR was done for 30 minutes without Mr. Matos showing vital signs and death was called at 11:42 p.m. Per the internal medicine consultation progress note, intern Dr. Luis Almarguer was called after Mr. Matos suffered a cardiorespiratory arrest and when he arrived Mr. Matos was receiving CPR and ACLS was performed. Mr. Matos was already intubated and did not respond to treatment. Dr. Girón was notified.

39. Mr. Matos die on July 10, 2019 at 11:42 p.m. with diagnose of septic shock, acute renal failure and tremens delirium.

**FIRST CAUSE OF ACTION: HOSPITAL MEDICAL NEGLIGENCE**

40. The proximate and only cause of the death of Mr. Matos and of all the damages suffered by Plaintiff was the combined negligence of all co-defendants. Specifically, co-defendants failed to provide the correct medical treatment to the patient

and incurred in medical malpractice by providing medical treatment below the standards established by the medical community.

41. The negligent acts and/or omissions of co-defendants are as follows:

   a. Dr. Girón discharged Mr. Matos on June 22, 2019, even though he presented symptoms which clearly showed signs and symptoms that requires urgent evaluation and medical care. Dr. Girón provided medical treatment below the standard of care and wrongly discharged Mr. Matos from the hospital.

   b. On June 23, 2019, even though the laboratories clearly indicated that Mr. Matos was in an emergency medical condition, Dr. Merced did not treat his conditions as if an emergency was taking place. Dr. Merced did not take into consideration Mr. Matos' medical conditions that place him a very high risk of pulmonary decompensation and failed to consider that Mr. Matos could have a cardiorespiratory arrest due to his prior medical conditions and existing conditions at that time. Dr. Merced provided a medical treatment below the standard of care.

   c. Once called, Dr. Girón became the attending physician of Mr. Matos and even though the laboratories clearly indicated that Mr. Matos was in an emergency medical condition, he simply focused on the alcohol withdrawal and negligently increased the doses of the Ativan rendering Mr. Matos non responsive. Dr. Girón negligently over sedated Mr. Matos to the point where he suffered a cardiorespiratory arrest, CPR had to be performed and he had to be intubated. Mr. Matos remained intubated

during the totality of this admission in Hospital Auxilio Mutuo. Dr. Giron did not consider Mr. Matos' prior conditions and actual conditions when increasing the doses of Ativan. Dr. Girón provided a medical treatment way below the standard of care that caused the damages to plaintiff.

d. Auxilio Mutuo and Sociedad Española are the employers or contractors of the nurses' personnel and respiratory therapy personnel, and as such are directly, jointly and vicariously liable for their negligent acts and/or omissions. The nurses and respiratory therapy personnel failed to monitor Mr. Matos while he was being transferred to his room from the emergency department, to the point that he had no monitor nor oxygen and suffered a cardiorespiratory arrest when he arrived. The escorts that transferred Mr. Matos from the emergency department failed to provide oxygen and monitoring during the transfer and upon arrival to his room, which caused Mr. Matos' cardiorespiratory depression. Auxilio Mutuo and Sociedad Española are also directly, jointly and vicariously liable for extending medical privileges to Dr. Merced and Dr. Girón. Auxilio Mutuo and Sociedad Española are directly, jointly and vicariously liable for the negligent acts and/or omissions of all the medical interns who provided medical treatment to Mr. Matos.

e. Corporation X and/or Auxilio Mutuo and/or Sociedad Española are the employers and/or contractor of Dr. Merced and any other codefendant, and as the owner, administrator or operator of Hospital Auxilio Mutuo's

emergency room, it is solitarily and vicariously liable for all negligent acts and/or omissions of Dr. Merced.

## DAMAGES

42. The departures from the standards of care of all co-defendants were the direct, proximate and only cause of Plaintiff's damages. These deviations caused Mr. Matos' damages and ultimately caused his death.

43. Mr. Matos was incorrectly discharged from the Hospital Auxilio Mutuo on June 22, 2019, he received substandard medical treatment by Dr. Girón. The next day, Mr. Matos was taken to the emergency room again via ambulance and yet again received medical treatment below the standard of care by Dr. Merced and Dr. Girón. Mr. Matos was over sedated to the point where he had a cardiorespiratory arrest, that could have been prevented had he had been not taken from the oxygen by the escorts and monitored adequately. Mr. Matos underwent CPR and intubation and remained intubated until he passed on July 10, 2019.

44. During his admission, Mr. Matos underwent several intubations since the tubes were not working properly. Mr. Matos suffered a second cardiorespiratory arrest and had to undergo CPR again until he passed. During his admission, Mr. Matos develop complications due to the mechanical ventilations and sepsis, which led to renal failure and others. During this time, Mr. Matos remained conscious and felt everything that was being done to him.

45. During this, plaintiff Ángel was beside his father. Ángel was present when Mr. Matos lost consciousness due to over sedation, suffered the cardiorespiratory arrest and CPR and the intubation was performed. Ángel had to witness how his father, a 68

year old man deteriorate before his eyes until he passed due to a second cardiorespiratory arrest. Ángel lost his father, his company, love and care, which has caused him emotional damages. Ángel's emotional damages are valued in no less than three million dollars ($3,000,000.00).

**WHEREFORE**, it is respectfully requested from this Honorable Court to grant all allegations in this complaint for plaintiff and against defendants with the imposition of costs, damages, interest and a reasonable amount of attorney's fees.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 3rd day of July, 2020.

**S/Pedro F. Soler Muñiz**
**PEDRO F. SOLER-MUÑIZ**
**USDC-PR NO. 212,909**
*Counsel for Plaintiffs*
Pedro F Soler Muñiz
1357 Ashford Ave.
PMB 106
San Juan, PR 00907
Tel. 787-774-6522; Fax. 787-706-8680
psoler@pedrosolerlaw.com

**S/Alejandro J. Fernandez Muzaurieta**
**ALEJANDRO J. FERNANDEZ MUZAURIETA**
**USDC-PR 223706**
*Counsel for Plaintiff*
Alejandro J. Fernandez Muzaurieta
PO BOX 16264
San Juan, PR 00908
Tel. 939-337-4740
alejandrofernandezz@yahoo.com

**S/Alejandra C. Martínez Méndez**
**ALEJANDRA C. MARTINEZ MENDEZ**
**USDC/PR NO. 303111**
*Counsel for Plaintiffs*
Pedro F. Soler Muñiz
1357 Ashford Ave.
PMB 106
San Juan, PR 00907
Tel. 787-774-6522; Fax 787-706-8680
amartinez@pedrosolerlaw.com